UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRETT J., | ) |
| | ) |
|       *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:19-cv-00270-DBH |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|       *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the ALJ erred in his handling of competing expert opinions, both vocational and psychological. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 2-20. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairment of degenerative disc disease, Finding 2, Record at 13; that he had the residual functional capacity ("RFC") to perform sedentary work as

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

defined in 20 C.F.R. § 416.967(a) except that he could frequently balance and climb ramps or stairs, could occasionally stoop, could not kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, and needed to avoid unprotected heights and uneven or slippery surfaces, Finding 4, *id.* at 19; that, considering his age (34 years old, defined as a younger individual, on the date his application was filed, October 14, 2016), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id.* at 24-25; and that he, therefore, had not been disabled from October 14, 2016, the date his application was filed, through the date of the decision, October 30, 2018, Finding 10, *id.* at 26. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Challenge to Resolution of Conflicting Vocational Evidence

The ALJ asked the vocational expert present at the plaintiff's hearing, Richard Hall, whether an individual with the RFC that he ultimately adopted could perform work existing in significant numbers in the national economy. *See* Record at 66. Hall testified that such a person could perform the representative jobs of quotation clerk, *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) ("DOT") § 237.367-046, with 125,000 jobs in the national economy, monitor, DOT § 379.367-010, with 130,000 jobs in the national economy, and addresser, DOT § 209.587-010, with 115,000 jobs in the national economy. *See id*. at 66-67.

The plaintiff's counsel inquired as to the source for the job numbers for those positions. *See id*. at 67-68. Hall responded, "U.S. Department of Labor, Bureau of Statistics, and then also training related to numbers and conferences which I'm required to attend." *Id*. at 68. He added that the "third resource is at those conferences I interact with my colleagues and while we do not discuss specific cases, we do communicate regarding retrieving the numbers." *Id*.

The plaintiff's counsel further inquired whether the cited jobs were "still performed as they were when the DOT was last updated[.]" *Id*. at 69. Hall responded, "Yes, sir. I've been monitoring these jobs and doing job placement for 40 years, and they have basically not changed over time." *Id*.

Post-hearing, the plaintiff's counsel submitted an affidavit of vocational expert David Meuse, *see id*. at 373-79, in which Meuse stated that the job numbers provided by Hall were "unrealistically large" and that the jobs themselves no longer existed as described in the 1991 DOT, which the Department of Labor had replaced with the Occupational Information Network, known as the "O*NET," *see id*. at 374-77 ¶¶ 9-28. Meuse stated that the Bureau of Labor Statistics data on which Hall purported to rely did not support his job numbers and that, using the more

3

accurate Job Browser Pro, there were only 3,423 telephone quotation clerk jobs nationwide, 4,558 surveillance system monitor jobs nationwide, and 8,047 addresser jobs nationwide. *See id*. at 374-77 ¶¶ 9, 11, 22.

Meuse added that (i) the job of telephone quotation clerk, which previously involved answering telephone calls from customers requesting current stock quotations, had morphed into a job requiring computer skills such as the use of accounting software and is now semi-skilled, rather than unskilled, (ii) the job of surveillance system monitor has either been merged with the duties of Transportation Safety Administration personnel or exists in much smaller numbers in retail settings and is no longer unskilled, in some cases having become a highly skilled job, and (iii) the job of addresser is now at least a semi-skilled job. *See id*. at 375-77 ¶¶ 10, 12-21, 23-28.

Meuse finally stated that he had read the report of agency examining consultant Nadir Behrem, Psy.D., and that the finding that the plaintiff had a full-scale IQ score of 69, placing him in the second percentile and the lowest 10 percent of the population, would be "very limiting[,]" typically requiring a special accommodation such as a job coach, and the finding that he had a Working Memory Index score of 66, in the first percentile, would render him unable "to perform sustained work." *Id*. at 378-79 ¶¶ 37-38, 40-41; *see also id*. at 813-19.

The ALJ relied on the Hall testimony, overruling the plaintiff's representative's objection to that testimony based on the Meuse affidavit. *See id*. at 25-26. He explained:

> Mr. Hall has professional knowledge and experience in job placement. The [plaintiff]'s representative asked him for the source of his job numbers, and he stated that he used the U.S. Department of Labor Bureau of Statistics, and "training related to numbers and conferences" he is required to attend, as well as interactions with colleagues at these conferences in which they communicate about job numbers. When asked if the jobs he cited are still performed the way they were when the DOT was last updated, Mr. Hall testified that they were. He stated that he has been monitoring these jobs, has been doing job placements for 40 years, and that they basically have not changed over time. The undersigned is not persuaded by Mr. Meuse's affidavit, as he inaccurately stated that Mr. Hall's numbers were

4

> based on the Bureau of Labor Statistics, whereas Mr. Hall described that he was also relying on his experience and training. While Mr. Meuse may not agree with Mr. Hall as to whether those jobs have changed over time, Mr. Hall compellingly testified that he was basing his findings on his 40 years' of experience and personal monitoring of the cited jobs.

*Id.* The ALJ added, in a footnote, "[t]he undersigned gives no weight to Mr. Meuse's opinion that the [plaintiff] is unemployable, as it is based on the assumption that [he] has 'certain mental limitations'" that were "not supported by the record, as discussed in detail herein, with particular reference to the discussion of Dr. Behrem's opinions as set forth above." *Id.* at 26 n.1.

The plaintiff argues that the ALJ erred in relying on the Hall testimony because the job numbers "are simply not possible" and "conjured from whole cloth" and, in any event, the three jobs at issue have evolved since the publication of the DOT into at least semi-skilled jobs, undermining the ALJ's reliance on them in view of his finding that the plaintiff had no transferable skills. Statement of Errors at 2-8; *see also* Finding 8, Record at 24. He adds that, in any event, Hall's testimony cannot stand as substantial evidence of the plaintiff's ability to perform other work at Step 5 because Hall failed to explain how his experience gave him a reliable basis to estimate job numbers in the national economy, as required by *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). *See* Statement of Errors at 3.[3]

The plaintiff also cites *Vining v. Astrue*, 720 F. Supp. 2d 126, 128 n.3 (D. Me. 2010), for the proposition that the Department of Labor no longer uses the DOT because it is outdated, and quotes *Sinclair v. Berryhill*, 266 F. Supp. 3d 545, 558-59 (D. Mass. 2017), for the proposition that, if "'O*NET is reliable enough for the author of the [DOT], the Department of Labor, to use, it

---

[3] The plaintiff also relies on attachments submitted to his statement of errors, including a copy of a May 2011 Social Security Administration "Occupational and Medical-Vocational Claims Review Study" that noted it was "doubtful" that several jobs described in the DOT, including that of addresser, "currently exist in significant numbers in our economy." Exh. B (ECF No. 13-2) to Statement of Errors. As the commissioner observes, *see* Opposition at 4 n.1, this study "merely mentioned that this position 'might be obsolete,' and the Social Security Administration has not promulgated any regulations removing this position from use by vocational experts[,]" *Bolick v. Berryhill*, NO. 5:16-cv-224-GCM, 2018 WL 4107999, at *4 (W.D.N.C. Aug. 29, 2018).

5

seems nonsensical that O*NET is unreliable for the [commissioner's] purposes.'" *Id*. at 4. He observes that the court in *Sinclair*, quoting extensively from *Feeley v. Comm'r of Soc. Sec.*, Civ. No. 14-4970(KM), 2015 WL 3505512 (D.N.J. June 3, 2015), rejected the notion that the quotation clerk job still existed as described in the DOT, *see id*. at 6, and, although the commissioner does not take administrative notice of the O*NET, the court in *Wennersten v. Colvin*, No. 12-cv-783-bbc, 2013 WL 4821474 (W.D. Wis. Sept. 10, 2013), deeming the DOT outdated, held that vocational testimony may be based on the O*NET, *see id*. at 9 n.2.

Finally, the plaintiff asserts that, in any event, the ALJ failed to deal with several of the issues raised by Meuse, "thus requiring a remand for the ALJ to deal with those issues in the first instance[,]" a proposition for which he cites *Patrick S. v. Saul*, Civil No. 1:18-cv-289-DBH, 2019 WL 3814283 (D. Me. Aug. 14, 2019). *Id*. at 8. Specifically, he argues, the ALJ ignored Meuse's opinion that "the jobs are largely no longer in existence" and, per the O*NET, are performed at the semiskilled rather than unskilled level, and he "responded only with a footnote" to Meuse's opinion that the testing scores would render him unemployable. *Id*. at 8-9.

I find no error in the ALJ's reliance on the Hall testimony or his rejection of the Meuse affidavit. First, there is no error pursuant to *Biestek*, which merely stands for the proposition that, in cases "in which a vocational expert refuses a request for underlying data[,] . . . [s]ometimes [the] expert's withholding of such data, when combined with other aspects of the record, will prevent her testimony from qualifying as substantial evidence." *Biestek*, 139 S. Ct. at 1157. The plaintiff's representative did not make a request of Hall at hearing for the underlying data supporting his assertion that his testimony was based in part on his experience. *See* Record at 65-72. Hall's testimony, hence, can stand as substantial evidence in support of the ALJ's vocational findings even though he did not elaborate on the manner in which his experience supported that testimony.

6

*See, e.g., Biestek*, 139 S. Ct. at 1155 ("[W]e begin with the parties' common ground: Assuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data.").[4]

Second, while Judge Hornby explained in *Vining* that he did "not rely on the description of job duties" in the DOT to reach the conclusion that certain jobs existed in several regions of the country, noting that the DOT "was last updated in 1991, and its job descriptions may now be badly out of date[,]" *Vining*, 720 F. Supp. 2d at 128 & n.3, the ALJ did not rely solely on the DOT in this case. He relied on the testimony of Hall, which was based in part on Hall's professional experience. Further, Judge Hornby recognized that, while the commissioner was "actively considering whether to go to a new system because of the [the DOT's] obsolescence[,]" the commissioner still used the DOT. *Id.* While the court in *Sinclair* held that the Appeals Council erred in relying on vocational testimony at hearing that a claimant could perform two obsolete jobs listed in the DOT, those of telephone clerk and table inspector, *see Sinclair*, 266 F. Supp. 3d at 561-62, this court has not held that reliance on a claimant's ability to perform certain jobs described in the DOT is misplaced as a matter of law because those jobs are obsolete, and I perceive no reason to do so here. As the commissioner points out, *see* Opposition at 5, he continues to take administrative notice of the DOT but not of the O*NET, *see, e.g.*, 20 C.F.R. § 416.966(d); Social Security Ruling 00-4p ("SSR 00-4p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2019), at 241. Thus, "even if the VE's testimony was in conflict with O*NET, there is no requirement that the VE's testimony comply with that database." *Malfer v. Colvin*, Civil Action No. 12-169J, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013).

---

[4] Indeed, *Biestek* recognized that vocational experts "may invoke not only publicly available sources but also information obtained directly from employers and data otherwise developed from their own experience in job placement or career counseling." *Biestek*, 139 S. Ct. at 1152-53 (citation and internal quotation marks omitted).

Third, and finally, I find no error in the ALJ's handling of the Meuse affidavit. This case is materially distinguishable from *Patrick S.*, in which this court held that a claimant has a right to submit rebuttal vocational evidence up until an ALJ's decision issues, as a result of which the ALJ's failure to address such evidence required remand. *See Patrick S.*, 2019 WL 3814283, at *1, 3-4. Here, the ALJ squarely addressed the Meuse affidavit. *See* Record at 25-26 & n.1. It is the job of the ALJ to resolve evidentiary conflicts, *see, e.g., Rodriguez*, 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the commissioner], not for the doctors or for the courts."), and the plaintiff offers no persuasive reason to disturb the ALJ's resolution of the conflict between the Hall and Meuse evidence.

The ALJ made clear that he rejected Meuse's opinion that the jobs at issue had changed over time and were performed at a semiskilled rather than unskilled level in stating that, "[w]hile Mr. Meuse may not agree with Mr. Hall as to whether those jobs have changed over time, Mr. Hall compellingly testified that he was basing his findings on his 40 years' of experience and personal monitoring of the cited jobs." Record at 26. He also made clear that he rejected Meuse's opinion that the plaintiff's testing scores would render him unemployable because it was based on an assumption that the plaintiff had certain mental limitations that the ALJ found unsupported by the record. *See id.* at 26 n.1. While the plaintiff separately challenges the rejection of those mental limitations, I find no reversible error in that regard for the reasons discussed below.

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Challenge to Finding of No Mental Limitations

The plaintiff also challenges the ALJ's attribution of great weight to the March 2017 opinion of agency nonexamining consultant David R. Houston, Ph.D., that he had no medically

8

determinable mental impairment. *See* Statement of Errors at 10-20. However, as the commissioner observes, *see* Opposition at 10, 19-20, any error is harmless.

The plaintiff contends that "the ALJ should have found a severe mental impairment at Step 2, adopting at least the moderate limitations advanced by Dr. De Paz-Ortiz[,] who concluded that the medical evidence presented to her showed a moderate mental condition, limiting [the plaintiff] to one to two step instructions in his RFC for Step 5." Statement of Errors at 20 (citing May 5, 2016, opinion of agency nonexamining consultant Annette De Paz-Ortiz, Psy.D., Record at 100-03). He argues that a limitation to one- to two-step tasks would have restricted him to reasoning level 1 jobs, precluding the performance of the three jobs at issue, each of which required a higher reasoning ability. *See id*. However, as the commissioner rejoins, *see* Opposition at 13, that additional limitation would not have been work-preclusive.

The plaintiff acknowledges that the addresser job the ALJ deemed him capable of performing has a General Educational Development ("GED") reasoning level of 2. *See* Statement of Errors at 20. As the commissioner points out, *see* Opposition at 20, this court recently held that a limitation to "work involving simple one- or two-step instructions and to making only simple, work-related decisions" permitted the performance of jobs with GED reasoning levels of 1 and 2, *Allison P. v. Berryhill*, No. 2:18-cv-00061-JHR, 2019 WL 1373646, at *5 (D. Me. Mar. 24, 2019) (citation and internal quotation marks omitted). Thus, even had the ALJ adopted the De Paz-Ortiz limitation, the plaintiff would have remained capable of performing the job of addresser. Hall testified that there are 115,000 such jobs in the national economy, *see* Record at 67, a number that in itself sufficed to support the finding that the plaintiff remained capable of performing other work existing in significant numbers in the national economy, *see, e.g., Vining*, 720 F. Supp.2d at 136 (determining that 11,000 jobs in the national economy constituted a significant number).

Remand, accordingly, is unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge